

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2006

# USA v. Cubbage

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3652

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Cubbage" (2006). 2006 Decisions. Paper 111.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3652

UNITED STATES OF AMERICA

v.

DEMETRIUS CUBBAGE,
Appellant

Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal No. 02-cr-00044)
District Judge: Honorable Joseph J. Farnan, Jr.

Submitted Under Third Circuit LAR 34.1(a)
December 4, 2006

Before: RENDELL and AMBRO, <u>Circuit</u> <u>Judges</u>
and BAYLSON*, <u>District</u> <u>Judge</u>.

(Filed: December 11, 2006)

OPINION OF THE COURT

* Honorable Michael M. Baylson, District Court Judge for the Eastern District of
Pennsylvania, sitting by designation.

RENDELL, *Circuit Judge*.

Demetrius Cubbage was convicted by a jury of possession with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii). The District Court sentenced him to 210 months imprisonment, 5 years supervised release, and a $100 special assessment. Cubbage appeals both his conviction and sentence. He argues that the District Court improperly admitted evidence and statements obtained through a police search of Cubbage's apartment, improperly instructed the jury on the concept of joint possession, and erred in sentencing Cubbage based on a judicial finding that Cubbage possessed more than 700 grams of "crack" cocaine. We have jurisdiction over Cubbage's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and we will affirm.

I.

Cubbage first challenges the District Court's denial of his motion to suppress evidence obtained from a police search of his apartment on the ground that the police did not comply with the knock and announce requirements of the Fourth Amendment. The District Court found that the police were justified in dispensing with the knock and announce requirement in this case because there was a reasonable probability that the people inside Cubbage's apartment were armed and that the police officers could be in danger of physical peril. The Court reached this conclusion based on the awareness of the police officers, prior to the execution of the warrant, of the facts that: (1) Cubbage had been previously convicted of carrying a concealed deadly weapon, (2) high level drug

dealers were in the apartment earlier on the day of the search, (3) when the officers exited their vehicle, people in the apartment complex in the area of Cubbage's apartment began to scream "5-0 is here, 5-0 is here," (4) when the officers were exiting their vehicle, a woman on a cellular phone outside the apartment complex said, "Girl, the police out here. They are getting ready to go into somebody's house," and (5) a half wall at the top of the stairs in Cubbage's apartment obscured the officers' view into the living room as they stood in the entryway at the bottom of the staircase. Cubbage does not challenge the District Court's determination that these circumstances were known to the officers at the time of the search, but rather argues that these circumstances did not justify dispensing with the knock and announce requirement.

We review the District Court's factual findings for clear error and exercise plenary review over the District Court's application of law to the facts of this case. *United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002). "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). We agree, under the totality of the circumstances known to the officers executing the warrant, that the officers had a reasonable suspicion that knocking and announcing their presence prior to executing the warrant at Cubbage's apartment would be dangerous. The warnings

shouted by Cubbage's neighbors prior to the search, Cubbage's prior conviction for possession of a deadly weapon, the presence of known drug dealers in the apartment earlier in the day, and the unfavorable physical layout of the apartment together gave rise to a reasonable suspicion that knocking and announcing prior to execution of the warrant would be dangerous. *See United States v. Cline,* 349 F.3d 1276, 1290 (10th Cir. 2003)(affirming finding of exigent circumstances where (a) prior search of defendant's residence had revealed firearms, (b) there was likelihood that defendant used counter-surveillance equipment and could be aware of their approach, (c) the police approach had taken longer than anticipated, and (d) people in the vicinity had observed the police approach and might have warned defendant). Therefore, we find no error in the District Court's denial of Cubbage's motion to suppress the evidence obtained from the search of his apartment.

## II.

Next, Cubbage argues that the District Court erred by instructing the jury on the concept of joint possession. Cubbage contends that there was insufficient evidence in the record to justify an instruction on joint possession because the evidence, if believed, established that Cubbage possessed the cocaine base *exclusively* and not jointly with anyone else. We note that it is counterintuitive for a defendant to seek reversal of his conviction based on the argument that the evidence presented at trial, if believed, established that he possessed the drugs recovered from his apartment solely, rather than jointly. Cubbage contends, however, that the giving of a joint possession instruction

4

under these circumstances is reversible error. Cubbage objected to the instruction at the charge conference and after the District Court instructed the jury.

In reviewing jury instructions, we review the trial court's charge for abuse of discretion, considering whether, in light of the evidence, the charge as a whole fairly and adequately submitted the issues in the case to the jury. *United States v. Zehrbach,* 47 F.3d 1252, 1264 (3d Cir. 1995)(en banc). We will reverse if "the instruction was capable of confusing and thereby misleading the jury." *Id.*(quoting *Bennis v. Gable,* 823 F.2d 723, 727 (3d Cir. 1987)). At Cubbage's trial, witnesses testified that the cocaine base seized from Cubbage's apartment was found in two locations: inside Cubbage's pant pocket and inside a helmet cover that Cubbage was seen removing from the trunk of his car prior to the search and that was later found under a cushion of the love seat in Cubbage's living room. Cubbage is correct that the evidence presented at trial could support a finding that he alone possessed the drugs, since the drugs were found in his clothing and concealed in the furniture of his living room.

However, the jury could have also concluded from the evidence presented that some of the drugs were possessed jointly by Cubbage and other people in the apartment. Seven other men were in the apartment at the time that the drugs were seized, including one man sitting on the couch near to the love seat in which a package of drugs was concealed. There was also a blue coat found on the love seat, which was not identified as belonging to Cubbage. At the time that the search was conducted, the drugs found in the love seat were in closer proximity to the men in the living room than they were to

5

Cubbage, who was showering in a locked bathroom in the apartment. The close physical proximity of these other people, and of personal property not identified as belonging to Cubbage, to the drugs in the love seat could have led the jury to conclude that Cubbage was not in exclusive possession of the drugs in the love seat at the time of the seizure. *See Johnson v. United States*, 506 F.2d 640, 643-44 (8th Cir. 1974)(finding no error in joint possession instruction because drugs were found in apartment that defendant shared with his sister and because another man was present in apartment and had access to drugs at the time they were seized). Considering the jury charge as a whole and the capacity of the joint possession instruction to confuse or mislead the jurors, we find no error in the District Court's instructing the jury on the theory of joint possession in this case.

### III.

Finally, Cubbage argues that the District Court erred by sentencing him based on facts that were proved to the judge by a preponderance of the evidence, rather than proved to a jury beyond a reasonable doubt. In the alternative, Cubbage argues that the government failed to prove by a preponderance of the evidence that the cocaine base Cubbage possessed was "crack" cocaine. After *Booker*, we review a district court's calculation of the sentencing range under the Guidelines for legal error, as part of our review of the reasonableness of the sentence imposed. *United States v. Jackson,* __ F.3d __, 2006 WL 3247919, at *4 (3rd Cir. Nov. 9, 2006).

Cubbage argues that the District Court was not permitted to make findings as to

6

the weight and nature of the drugs by a preponderance of the evidence because these judicial findings resulted in a massive jump in Cubbage's sentencing range under the Guidelines. We disagree. Because the Sentencing Guidelines are now advisory, rather than mandatory, judicial fact finding that results in an increase in a defendant's maximum sentence under the Guidelines is not unconstitutional. "[T]he clear intent of the remedial opinion in *Booker* was for the process of calculating the Guidelines to continue operating as before." *Jackson*, 2006 WL 3247919, at *3.

We also reject Cubbage's argument that the government failed to prove by a preponderance of the evidence that the "cocaine base" he possessed was "crack" cocaine. Although the government has the burden to prove that the particular form of cocaine base possessed by Cubbage was "crack" in order to trigger the enhanced Guidelines penalties for "crack" possession, *United States v. James*, 78 F.3d 851, 855 (3d Cir. 1995), the testimony of an experienced law enforcement officer can be sufficient to prove that the substance is "crack" cocaine, *United States v. Roman*, 121 F.3d 136, 141 (3d Cir. 1997).

At Cubbage's trial, four law enforcement officers testified that the drugs found in Cubbage's apartment were, or appeared to be, "crack cocaine." Detective Pires testified that he found "a clear plastic bag that contained a yellowish-white rocklike substance that appeared to be crack cocaine" in Cubbage's pants pocket. Detective Mailey described the package of drugs found in the love seat in Cubbage's living room as "crack cocaine." Detective Boney also testified that the drugs found in Cubbage's love seat "appeared to me to be crack cocaine." Finally, Detective Matthews described the drugs seized from

7

the love seat and from Cubbage's pants pocket as "crack cocaine." Detective Pope, who testified for the government as an expert on the distribution, price and packaging of "crack cocaine base," also identified the drugs found in the apartment as "crack cocaine."[1] In addition, the government presented the testimony of a forensic chemist, who stated that the drugs found in Cubbage's apartment contained a mixture of "cocaine in the base form also known as crack" and cocaine hydrochloride. Cubbage challenged the chemist's testimony with the testimony of another forensic chemist, who concluded that it could not be determined from the tests performed by the government chemist whether the cocaine tested was cocaine salt or cocaine base.

At sentencing, the District Court credited the trial testimony of the police detectives and, based on their testimony, found that the government had met its burden to prove that the cocaine base recovered from the apartment was "crack" cocaine. Cubbage objected to this finding prior to and at the time of sentencing. Given the detectives' years of experience with the appearance and packaging of crack cocaine and the lack of evidence presented to contradict their testimony that the substances recovered were, or appeared to be, "crack" cocaine, we find no error in the District Court's finding that the

---

[1]Detective Pope was asked at trial to identify the substance "in Government Exhibits 1 and 15." It appears that the transcript contains an error and that the question actually posed was as to the identity of the substances in Government Exhibits 6 and 15, which were the cocaine substances recovered from Cubbage's apartment. All of the prior questions in this line of inquiry related to Government Exhibits 6 and 15, and it would make little sense to ask Detective Pope to identity the substance in Government Exhibit 1, which was a Tanita digital scale.

8

government met its burden to prove that the cocaine base possessed by Cubbage was "crack" cocaine.

IV.

Accordingly, for the reasons set forth above, we will affirm Cubbage's conviction and sentence.